**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | |
|---|---|
| DANIELLE HUBBARD, Individually and for Others Similarly Situated | **Case No. ________________** |
| v. | Jury Trial Demanded |
| HUNTERDON MEDICAL CENTER | FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Danielle Hubbard (Hubbard) brings this class and collective action to recover unpaid wages and other damages from Hunterdon Medical Center (Hunterdon).

2. Hunterdon employed Hubbard as one of its Hourly Employees (defined below).

3. Hubbard and the other Hourly Employees regularly work more than 40 hours in a week.

4. Hunterdon pays them by the hour.

5. But Hunterdon does not pay Hubbard and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 in a workweek.

6. Instead, Hunterdon automatically deducts 30 minutes a day from Hubbard's and the other Hourly Employees' recorded hours for so-called "meal breaks," regardless of whether they actually receive a *bona fide* meal break (Hunterdon's "auto-deduct policy").

7. Thus, Hunterdon does not pay Hubbard and the other Hourly Employees for that time.

8. But Hubbard and the other Hourly Employees do not actually receive *bona fide* meal breaks.

9. Instead, Hunterdon requires them to remain on duty and perform compensable work throughout their shifts and/or subjects them to work interruptions during their unpaid "meal breaks."

10. To make matters worse, because of the COVID-19 pandemic, Hunterdon required Hubbard and the other Hourly Employees to sanitize, then prepare and put on safety gear and protective clothing, while on Hunterdon's premises, "off the clock."

11. Likewise, Hunterdon required Hubbard and the other Hourly Employees to remove and dispose of or store safety gear and protective clothing , as well as shower, while on Hunterdon's premises, "off the clock." (¶¶ 10-11 together, Hunterdon's "pre/post shift off the clock policy").

12. Hunterdon did not pay Hubbard and the other Hourly Employees for the time spent changing clothes, donning and doffing PPE, and showering before and after

their shifts.

13. Finally, Hunterdon pays Hubbard and the other Hourly Employees non-discretionary bonuses that it fails to include in their regular rates of pay for overtime purposes (Hunterdon's "bonus pay scheme").

14. Hunterdon's auto-deduct policy, pre/post shift off the clock policy, and bonus pay scheme violate the Fair Labor Standards Act (FLSA) and the New Jersey Wage and Hour Law, as amended by the New Jersey Wage Theft Act (NJWHL), and New Jersey Wage Payment Law (NJWPL) by failing to compensate Hubbard and the other Hourly Employees for all hours worked, including overtime at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

15. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

16. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

17. This Court has general personal jurisdiction over Hunterdon because it maintains its principal place of business in New Jersey.

18. Venue is proper because Hunterdon maintains its principal place of business in Flemington, New Jersey, which is in this District and Division. 28 U.S.C. §

1391(b)(1).

## PARTIES

19. Hunterdon employed Hubbard as a registered nurse (RN) from approximately July 2017 through July 2023.

20. Throughout her employment, Hunterdon paid Hubbard under its auto-deduct policy, pre/post shift off the clock policy, and bonus pay scheme.

21. Hubbard's written consent is attached as **Exhibit 1**.

22. Hubbard brings this class and collective action on behalf of herself and similarly situated Hunterdon employees.

23. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees who worked under Hunterdon's auto-deduct policy, pre/post shift off the clock policy, and/or bonus pay scheme during the last three years through final resolution of this action (the "FLSA Collective Members").**

24. Hubbard also seeks to represent a class under New Jersey law pursuant to FED. R. CIV. P. 23.

25. The putative New Jersey class of similarly situated employees is defined as:

> **All hourly employees in New Jersey who worked under Hunterdon's auto-deduct policy, pre/post shift off the clock policy, and/or bonus pay scheme during the last six years through final resolution of this action ("New Jersey Class Members").**

26. The FLSA Collective Members and the New Jersey Class Members are

collectively referred to as the "Hourly Employees."

27. Hunterdon is a New Jersey non-profit healthcare facility headquartered in Flemington, New Jersey.

28. Hunterdon may be served with process through its registered agent for service of process: **Patrick Gavin, 2100 Wescott Drive, Flemington, New Jersey 08822**, or wherever he may be found.

## FLSA COVERAGE

29. At all relevant times, Hunterdon was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

30. At all relevant times, Hunterdon was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r)(2)(A).

31. At all relevant times, Hubbard and the other Hourly Employees were Hunterdon's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

## FACTS

32. Hunterdon is a "178-bed, not-for-profit teaching hospital … provid[ing] emergency, critical and surgical care in Flemington, 24 hours a day, 7 days a week."[1]

33. To meet its business objectives, Hunterdon employs workers, including Hubbard and the other Hourly Employees, to provide patient care.

---

[1] https://www.hunterdonhealth.org/about-us (last visited March 24, 2026).

34. For example, Hunterdon employed Hubbard as an RN from approximately July 2017 through July 2023.

35. Hunterdon paid Hubbard approximately $62 an hour.

36. Throughout her employment, Hubbard regularly worked more than 40 hours in a workweek.

37. Indeed, Hubbard typically worked approximately 12 hours a day and 3 to 4 days a week "on the clock" (36 to 48 hours a workweek).

38. Likewise, the other Hourly Employees typically work approximately 12 hours a day and 3 to 4 days a week (36 to 48 hours a workweek) "on the clock."

39. Hunterdon records Hubbard's and the other Hourly Employees' "on the clock" hours through the timekeeping systems it selects and controls.

40. Hunterdon's employment records reflect the number of "on the clock" hours it recorded Hubbard working each week.

41. Hunterdon's employment records likewise reflect the number of "on the clock" hours it recorded the other Hourly Employees working each week.

42. But throughout their employment, Hunterdon has not paid Hubbard and the other Hourly Employees for all their hours worked.

43. Instead, Hunterdon subjects Hubbard and the other Hourly Employees to its pre/post shift off the clock policy.

44. For example, in addition to Hubbard's primary job duties as an RN, which

included monitoring patients, providing direct patient care, preparing surgical patients for the operating room, and setting up hospital rooms, Hunterdon required Hubbard to sanitize and put on protective clothing and safety gear (including gloves, gowns, N95 respirators, face shields, goggles), fundamentally necessary to performing her job, prior to her shifts, on Hunterdon's premises "off the clock," and without compensation.

45. This took Hubbard approximately 10 minutes each workday.

46. Hubbard could not perform her job duties in accordance with Hunterdon's policies, procedures, and expectations without this protective clothing and safety gear.

47. Hubbard could not safely perform her job duties in accordance with Hunterdon's policies, procedures, and expectations without this protective clothing and safety gear.

48. Sanitizing and donning safety gear were integral and indispensable work duties for Hubbard, fundamentally intertwined with her other RN job duties.

49. Particularly during the COVID-19 pandemic, performing this pre-shift work was intrinsic and necessary to the sanitary and effective provision of medical care that Hunterdon hired Hubbard to perform.

50. Likewise, Hunterdon required Hubbard to remove and discard her protective clothing and safety gear, and shower, after her shifts, "off the clock," while still on Hunterdon's premises.

51. This took Hubbard approximately 15 to 30 minutes each workday.

52. Hubbard could not perform her job duties in accordance with Hunterdon's policies, procedures, and expectations without removing and disposing of her protective clothing and safety gear and showering each workday.

53. Removing and disposing of her protective equipment and safety gear and showering were therefore integral and indispensable work duties for Hubbard.

54. But under its pre/post shift off the clock policy, Hunterdon did not compensate Hubbard for the same.

55. Thus, Hunterdon failed to pay Hubbard for all hours worked, including overtime wages for overtime hours worked.

56. Hubbard and the other Hourly Employees perform their jobs under Hunterdon's supervision and use materials, equipment, and technology Hunterdon approves and supplies.

57. Hunterdon requires Hubbard and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

58. At the end of each pay period, Hubbard and the other Hourly Employees receive wages from Hunterdon that are determined by common systems and methods Hunterdon selects and controls.

59. But, just as with Hubbard, Hunterdon fails to pay the other Hourly

Employees for all their hours worked.

60. Indeed, Hunterdon subjects the other Hourly Employees to its pre/post shift off the clock policy.

61. Specifically, like Hubbard, Hunterdon required the other Hourly Employees to sanitize and prep and put on protective clothing and safety gear (including gloves, gowns, N95 respirators, face shields, goggles), prior to their scheduled shifts, on Hunterdon's premises "off the clock," and without compensation.

62. And Hunterdon required the other Hourly Employees to remove and discard or store protective clothing and safety gear and shower, on Hunterdon's premises, "off the clock."

63. Like Hubbard, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their scheduled shifts.

64. And like Hubbard, these job duties take the other Hourly Employees approximately 25 to 40 minutes each workday.

65. Additionally, Hunterdon employed Hubbard subject to its auto-deduct policy.

66. Specifically, Hunterdon automatically deducted 30 minutes a day from Hubbard's hours for so-called "meal breaks."

67. Thus, Hunterdon did not pay Hubbard for that time.

68. But throughout her employment, Hubbard did not actually receive *bona fide* meal breaks.

69. Instead, Hunterdon required Hubbard to perform compensable work throughout her shifts, including during so-called "meal breaks."

70. As a result of its auto-deduct policy, Hunterdon failed to pay Hubbard wages for all hours worked, including overtime wages during weeks she worked in excess of 40 hours.

71. Hunterdon likewise subjects the other Hourly Employees to its auto-deduct policy.

72. Just as with Hubbard, Hunterdon automatically deducts 30 minutes a day from its other Hourly Employees' hours for so-called "meal breaks."

73. Hunterdon automatically deducts this time regardless of whether they actually receive full, uninterrupted, 30-minute meal breaks.

74. Hunterdon simply assumes Hubbard and the other Hourly Employees receive *bona fide* meal breaks each shift they work.

75. But, like Hubbard, the other Hourly Employees regularly do not actually receive *bona fide* meal breaks.

76. Instead, like Hubbard, Hunterdon requires the other Hourly Employees to remain on duty and perform compensable work for Hunterdon's predominant benefit throughout their shifts, including during unpaid "meal breaks."

77. And, like Hubbard, Hunterdon subjects its other Hourly Employees to work interruptions during unpaid "meal breaks."

78. Because of these work interruptions, Hubbard and the other Hourly Employees are not free to engage in personal activities during their unpaid "meal breaks."

79. In other words, Hubbard and the other Hourly Employees are not relieved of patient care duties during unpaid "meal breaks."

80. Rather, Hubbard and the other Hourly Employees are forced to remain on-duty and perform their regular patient care duties.

81. Thus, Hubbard and the other Hourly Employees routinely spend unpaid "meal breaks" performing work for Hunterdon's—not their own—predominant benefit.

82. This unpaid time is compensable under the FLSA and New Jersey law because Hunterdon knew or should have known: (1) Hubbard and its other Hourly Employees were performing unpaid work during "meal breaks"; (2) they were interrupted with work duties during attempted "meal breaks"; (3) they were not completely relieved of all duties during unpaid "meal breaks"; (4) they entirely skipped "meal breaks" due to work demands; (5) unpaid "meal breaks" were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during unpaid "meal breaks" because of work interruptions; (7) they remained on Hunterdon's

premises and under Hunterdon's supervision during unpaid "meal breaks"; and/or (8) they spent unpaid meal breaks performing their regular duties for Hunterdon's predominant benefit.

83. Hunterdon fails to exercise its duty as Hubbard's and the other Hourly Employees' employer to ensure these employees are not performing work that Hunterdon does not want performed.

84. Hunterdon knows, should know, or recklessly disregards whether Hubbard and the other Hourly Employees routinely perform work "off the clock" and without pay.

85. Thus, Hunterdon requires, requests, suffers, or permits Hubbard and the other Hourly Employees to work "off the clock."

86. Despite accepting the benefits, Hunterdon does not pay Hubbard and the other Hourly Employees for compensable work they perform before and after their shifts and during automatically deducted "meal breaks."

87. Thus, under Hunterdon's pre/post shift off the clock policy and auto-deduct policy, Hubbard and the other Hourly Employees are denied earned wages for compensable hours worked and overtime wages during workweeks in which they work more than 40 hours.

88. Finally, Hunterdon does not pay Hubbard and the other Hourly Employees at the required premium overtime rates for all hours worked in excess of 40

in a workweek.

89. Instead, Hunterdon pays Hubbard and the other Hourly Employees under its bonus pay scheme.

90. Specifically, Hunterdon agrees to pay and subsequently pays Hubbard and the other Hourly Employees non-discretionary bonuses for performing work, including performance bonuses, shift bonuses, and shift differentials, based on its criteria.

91. But Hunterdon excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes during workweeks in which they earned the bonuses and worked more than 40 hours.

92. Thus, under its bonus pay scheme, Hunterdon does not pay Hubbard and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## Class and Collective Action Allegations

93. Hubbard brings her New Jersey state law claims as a class action pursuant to Fed. R. Civ. P. 23 and brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

94. Like Hubbard, the other Hourly Employees are victimized by Hunterdon's auto-deduct policy, pre/post shift off the clock policy, and/or bonus pay scheme.

95. Other Hourly Employees worked with Hubbard and indicated they were paid in the same or similar manner under Hunterdon's auto-deduct policy, pre/post

shift off the clock policy, and/or bonus pay scheme.

96. Based on her experience with Hunterdon, Hubbard is aware Hunterdon's auto-deduct policy, pre/post shift off the clock policy, and bonus pay scheme were imposed on other Hourly Employees.

97. The Hourly Employees are similarly situated in the most relevant respects.

98. Even if their job duties and locations vary, these differences do not matter for the purpose of determining their entitlement to earned wages at their agreed upon hourly rates, and overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

99. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

100. Rather, Hunterdon's auto-deduct policy, pre/post shift off the clock policy, and bonus pay schemes render Hubbard and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages at their agreed rates and overtime wages at the required rates based on their true regular rates of pay.

101. Hunterdon's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

102. Hunterdon's records also show it automatically deducted 30 minutes a workday from the Hourly Employees for so-called "meal breaks."

103. And Hunterdon's records show it paid Hubbard and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for overtime purposes.

104. The back wages owed to Hubbard and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

105. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Hunterdon's records, and there is no detraction from the common nucleus of liability facts.

106. Therefore, the issue of damages does not preclude class or collective treatment.

107. Hubbard's experiences are typical of the experiences of the other Hourly Employees.

108. Hubbard has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

109. Hubbard has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and New Jersey law.

110. Hubbard and her counsel will fairly and adequately protect the interests of the Hourly Employees.

111. Hubbard retained counsel with significant experience in handling complex class and collective action litigation.

112. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Hunterdon will reap the unjust benefits of violating the FLSA and New Jersey law.

113. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

114. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Hunterdon.

115. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

116. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

117. Among the common questions of law and fact are:

a. Whether Hunterdon imposed its pre/post shift off the clock policy on the Hourly Employees;

b. Whether Hunterdon's pre/post shift off the clock policy deprived the Hourly Employees of wages for hours worked, including overtime wages;

c. Whether Hunterdon automatically deducted 30 minutes a day for "meal breaks";

d. Whether Hunterdon required, requested, suffered, or

permitted the Hourly Employees to work off the clock and without pay;

e. Whether Hunterdon paid the Hourly Employees non-discretionary bonuses;

f. Whether Hunterdon failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

g. Whether Hunterdon failed to pay the Hourly Employees wages for all hours worked, including overtime wages at the required premium rates based on all remuneration;

h. Whether Hunterdon's decision not to pay the Hourly Employees overtime wages at the required rates for overtime hours worked was made in good faith; and

i. Whether Hunterdon's violations were willful.

118. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

119. The Hourly Employees are known to Hunterdon, are readily identifiable, and can be located through Hunterdon's business and personnel records.

## HUNTERDON'S VIOLATIONS WERE WILLFUL

120. Hunterdon knew it employed Hubbard and the other Hourly Employees.

121. Hunterdon knew it was subject to the FLSA's and NJWHL's overtime provisions.

122. Hunterdon knew the FLSA and NJWHL required it to pay non-exempt employees, including Hubbard and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

123. Hunterdon knew Hubbard and each Hourly Employee worked more than 40 hours in at least one workweek during the last 6 years because these employees were required to report their "on the clock" hours via Hunterdon's timekeeping system.

124. Hunterdon knew the FLSA and New Jersey law required it to pay employees, including the Hourly Employees, for all hours these employees performed compensable work.

125. Hunterdon knew that, as the Hourly Employees' employer, it had a duty to ensure these employees were not performing work "off the clock" that Hunterdon did not want performed.

126. Nonetheless, Hunterdon knew it required the Hourly Employees to perform integral and indispensable work before and after their shifts, while on its premises.

127. Hunterdon knew it failed to provide the Hourly Employees with *bona fide*, uninterrupted meal breaks.

128. Hunterdon knew the Hourly Employees did not actually receive *bona fide*, uninterrupted meal breaks.

129. Hunterdon knew the Hourly Employees regularly worked during their unpaid "meal breaks."

130. Hunterdon knew the Hourly Employees regularly spent their unpaid "meal breaks" substantially performing their regular job duties for Hunterdon's predominant benefit.

131. Indeed, Hourly Employees complained to Hunterdon's management, HR, and/or their supervisors about being forced to work during their unpaid "meal breaks."

132. Thus, Hunterdon knew, should have known, or recklessly disregarded the fact that the Hourly Employees performed compensable work during their unpaid meal breaks.

133. Nonetheless, Hunterdon automatically deducted 30 minutes a day from the Hourly Employees' recorded work time for "meal breaks."

134. In other words, Hunterdon knew, should have known, or recklessly disregarded the fact that it did not pay the Hourly Employees for all the hours they performed compensable work.

135. Hunterdon knew it paid Hubbard and the other Hourly Employees non-

discretionary bonuses.

136. Hunterdon knew it was required to include these non-discretionary bonuses in their regular rates of pay.

137. Hunterdon knew it excluded these non-discretionary bonuses from the Hourly Employees' regular rates of pay for overtime purposes.

138. And Hunterdon knew the FLSA and NJWHL required it to pay Hubbard and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

139. Hunterdon's failure to pay Hubbard and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

140. Hunterdon knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful auto-deduct policy and bonus pay scheme that deprived Hubbard and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

141. Hubbard brings her FLSA claims as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

142. Hunterdon violated, and is violating, the FLSA by employing non-exempt

employees such as the Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for hours in excess of 40 in a workweek, including hours worked "off the clock."

143. Hunterdon's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

144. Accordingly, Hunterdon owes the Hourly Employees the difference between the wages actually paid and the required overtime wages actually earned.

145. Because Hunterdon knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Hunterdon owes the Hourly Employees these wages for at least the past 3 years.

146. Hunterdon is also liable to the Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

147. Finally, the Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE NJWHL
## (NEW JERSEY CLASS)

148. Hubbard brings her NJWHL claim on behalf of herself and the other New Jersey Class Members pursuant to FED. R. CIV. P. 23.

149. Hunterdon's conduct violates the NJWHL. N.J.S.A. 34:11-56a *et seq*.

150. At all relevant times, Hunterdon was subject to the NJWHL because

Hunterdon was (and is) an "employer" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(g).

151. At all relevant times, Hunterdon employed the New Jersey Class Members as its covered "employees" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(f) and (h).

152. The NJWHL requires employers, like Hunterdon, to pay non-exempt employees, including the New Jersey Class Members, overtime wages at rates of at least 1.5 times their true regular rates of pay for all hours worked after 40 in a workweek. *See* N.J.S.A. 34:11-56a4(b).

153. Hunterdon violated, and is violating, the NJWHL by employing non-exempt employees (the New Jersey Class Members) for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their true regular rates of pay for all hours worked after 40 in a workweek. *See* N.J.S.A. 34:11-56a4(b).

154. Hunterdon's unlawful conduct harmed the New Jersey Class Members by depriving them of the overtime wages they are owed.

155. Accordingly, Hunterdon owes the New Jersey Class Members the difference between the wages actually paid and the overtime wages actually earned, which to date remain outstanding. *See* N.J.S.A. 34:11-56a25.

156. In violating the NJWHL, Hunterdon acted willfully, without a good faith

basis, and with reckless disregard of clearly applicable New Jersey law.

157. Thus, Hunterdon is also liable to the New Jersey Class Members for an additional amount equal to 200% of their unpaid wages as liquidated damages. *See* N.J.S.A. 34:11-56a25.

158. Finally, the New Jersey Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* N.J.S.A. 34:11-56a25.

## COUNT III
## FAILURE TO PAY EARNED WAGES UNDER THE NJWPL
## (NEW JERSEY CLASS)

159. Hubbard brings her NJWPL claim on behalf of herself and the New Jersey Class Members pursuant to FED. R. CIV. P. 23. Hunterdon's alleged conduct violates the NJWPL. N.J.S.A. 34:11-4.1, *et seq*.

160. At all relevant times, Hunterdon was an "employer" within the meaning of and subject to the requirements of the NJWPL. *See* N.J.S.A. 34:11-4.1(a).

161. At all relevant times, Hunterdon employed the New Jersey Class Members as covered "employees" within the meaning of the NJWPL. *See* N.J.S.A. 34:11-4.1(b).

162. During the course of their employment, Hunterdon offered and agreed to pay each New Jersey Class Member an agreed upon hourly rate of pay.

163. Each New Jersey Class Member accepted Hunterdon's offer.

164. The New Jersey Class Members' agreed upon hourly rates of pay are

therefore "wages" within the meaning of the NJWPL. *See* N.J.S.A. 34:11-4.1(c).

165. The NJWPL requires employers, like Hunterdon, to pay employees, including the New Jersey Class Members, "the full amount of wages due" to these employees for all the time they work at the rate agreed to by the parties, on their established and regular paydays. *See* N.J.S.A. 34:11-4.2.

166. Hunterdon violated, and is violating, the NJWPL by knowingly failing to pay the New Jersey Class Members the full amount of wages these employees earned (at their agreed hourly rates) for all hours of work they perform, including those worked "off the clock." *See* N.J.S.A. 34:11-4.2.

167. The New Jersey Class Members did not authorize Hunterdon to withhold these unpaid earned wages.

168. The New Jersey Class Members' earned wages have remained unpaid for more than thirty days.

169. Hunterdon's unlawful conduct harmed the New Jersey Class Members by depriving them of the earned wages they are owed.

170. Accordingly, the New Jersey Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), plus liquidated damages in an amount equal to 200% of their unpaid wages, as well as attorney's fees and costs. *See* N.J.S.A. 34:11-4.10(c).

## JURY DEMAND

171. Hubbard demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Hubbard, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Hubbard and her counsel to represent the interests of the Hourly Employees;

d. An Order finding Hunterdon liable to Hubbard and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Hunterdon liable to Hubbard and the other New Jersey Class Members for their unpaid wages under the NJWHL and NJWPL, plus liquidated damages in an amount equal to 200% of their unpaid wages;

f. A Judgment against Hunterdon awarding Hubbard and the other Hourly Employees all their unpaid overtime

wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA, NJWHL, and/or NJWPL;

g. An Order awarding attorneys' fees, costs, and expenses;

h. An Order awarding pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: April 1, 2026

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/Edmund C. Celiesius*

Edmund C. Celiesius
NJ No. 293642019
Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Phone: (713) 352-1100
Fax: (713) 352-3300
eceliesius@mybackwages.com
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
NY Reg. No. 6154876
**BRUCKNER BURCH PLLC**
5847 San Felipe St., Suite 2400
Houston, Texas 77057

Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR HUBBARD & THE HOURLY EMPLOYEES**